SELZ, SCHWAB & COMPANY, APPELLANTS, V. GEORGE HOCKNELL, EXECUTOR, ET AL., APPELLEES.*

FILED JUNE 5, 1901.   No. 9,692.

Commissioner's opinion, Department No. 3.

FRAUD: POOR JUDGMENT: TRADE: DEBTOR AND CREDITOR: COURT CAN AFFORD NO RELIEF. The courts will use their efforts to protect a creditor against the fraudulent acts of his debtor, but as against his poor judgment and unfortunate trades they can afford no relief.

APPEAL from the district court for Lancaster county. Heard below before HOLMES, J. *Affirmed.*

*Stephen L. Geisthardt* and *Mockett & Polk,* for appellants.

*Ricketts & Wilson, contra.*

* Rehearing allowed.

DUFFIE, C.

The plaintiff and appellant filed its petition in the nature of a creditor's bill by which it sought to charge the defendants, William Simpson and George Hocknell as partners, the First National Bank of McCook, Nebraska, and the McCook Loan & Trust Company, with the value of a certain stock of boots and shoes sold by the defendant Parker, to William Simpson and George Hocknell on the 5th of September, 1895. It is alleged in the petition that the defendants Simpson and Hocknell, acting on their own behalf and on behalf of the First National Bank of McCook and the McCook Loan & Trust Company, entered into a conspiracy to obtain possession of Parker's stock of goods at much less than its real value and to defraud the creditors of said Parker. The evidence clearly establishes that on or about the 5th of September, 1895, Parker sold his stock of goods to Simpson and Hocknell for the sum of $8,500 in cash, and fifteen quarter sections of land in Dundy county to be selected out of fifty-two sections, a description of which is contained in a list furnished Parker at the time the trade was made, the fifteen sections to be incumbered by a mortgage for $8,500. At that time Parker was indebted to a considerable amount, and the stock of goods transferred to Simpson and Hocknell is shown to be of the value of from $14,000 to $16,500. No conveyance of the Dundy county land was ever made to Parker, and the agreement to convey such land appears to have been assigned by Parker to one Cook.

At the conclusion of the trial the district court entered a decree dismissing the plaintiff's petition, as well also as certain petitions of intervention filed by other creditors of Parker. The evidence is not conflicting as to most of the material facts in the case, and counsel for appellant insists that the rule so long followed by this court, that it will not disturb a judgment where the evidence is conflicting, can not apply. He argues that where

the material facts are established by uncontradicted testimony, it becomes a question of law merely as to what judgment should be entered, and if the trial court does not enter the proper judgment, this court on appeal should so do. We accept, without hesitation, the views of counsel. Where the facts are agreed upon, or where all the testimony goes to support one state of facts, the only deduction to be drawn from such facts is a question of law, and if the trial court errs in correctly applying the law to the undisputed facts, this court will not hesitate to vacate such judgment and enter a proper one.

The plaintiff, in order to be entitled to a decree in its favor, must show that Parker sold his stock of goods with the intent to hinder, delay or defraud his creditors, and that Simpson and Hocknell purchased the goods either knowing of Parker's intent or participating therein. If the undisputed evidence makes this kind of a case, then the district court should have given a decree for the plaintiff and the interveners. If such a case was not clearly made, or if the evidence was conflicting upon these propositions, then the district court was to exercise its best judgment as to the decree it would enter and this court will not interfere. We have examined the evidence carefully, and can not see that the district court erred in the judgment which it entered.

Before trading, Parker went to Dundy county from Lincoln and examined several of the quarter sections of land which he was offered in the trade. He testified that from this examination he concluded that the land was worth from $7 to $10 per acre. At the lowest price which he fixed as the value of the land at that time, there would be a margin of $8,000 or more above the incumbrance thereon, and this, together with the cash actually paid, would be about the fair value of his stock of goods.

During the negotiation he refused to trade his stock and take the entire value of the same in land, stating to Simpson that he wished money to pay his creditors and to start in business again. He further testified that he did

use the money received from the sale of his goods to pay his creditors.

It is true that the land which was to be conveyed to him is shown to be of no value, above the amount for which it is incumbered, but we do not think that a mistaken judgment exercised by Parker, relating to the value of the land which he was getting, has any tendency to show fraud or bad faith toward his creditors in making the sale. The law undertakes to protect a creditor against the fraudulent acts of his debtor, but as against his poor judgment and unfortunate trades, however disastrous they may prove, the law can afford no relief. In selecting parties to whom credit is to be extended, the creditor must, at his peril, select those on whose judgment in business affairs he is willing to rely, and can not look to the courts to relieve him from unwise and unfortunate trades made by his debtor, unless they are tainted with a fraudulent intent to place his property beyond the creditor's reach.

At the time he visited the lands, the crops in Dundy county were, as he testified, in better condition and more promising than crops in the vicinity of Lincoln, and this influenced him in his estimate of the value of these lands. But showing a mistaken judgment as to value is not showing a fraudulent intent, and the trial court, who saw the witness and heard him testify, had a much better opportunity to judge of his candor and credibility than have we who are confined to what the records disclose. The trial court evidently believed that there was no intent upon the part of Parker to defraud his creditors. There is evidence ample to sustain such a finding and we recommend that the judgment be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons above given, the judgment of the district court is

AFFIRMED.